**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

RIVIERA MARSHALL,          :
                           :
      Petitioner,        :
                           :      CASE NO. 4:06-CR-26-CDL
v.                      :        28 U.S.C. § 2255
                           :      CASE NO. 4:11-CV-90103 CDL
UNITED STATES OF AMERICA,  :
                           :
      Respondent.      :
_____

## REPORT AND RECOMMENDATION

Petitioner Marshall's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 is before this court for preliminary consideration under Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

## Procedural History

Petitioner was indicted in this Court on June 1, 2006, for kidnapping in violation of 18 U.S.C. § 1201 and 18 U.S.C. § 2. (Indictment 1, ECF No. 1). On August 22, 2007, a superseding indictment was filed which corrected the date of the offense which had been listed on the original indictment from May 19, 2006, to May 19, 2005. (ECF No. 89.) On September 4, 2007, Petitioner's trial began. Then, on September 7, 2007, Petitioner was found guilty of the offense of kidnapping. (ECF No. 104.) Subsequent to the preparation of a Pre-Sentence Report (PSR), the Court sentenced Petitioner on February 28, 2008, to a term of imprisonment of 360 months. (ECF No. 112). Petitioner

appealed his conviction and sentence to the United States Court of Appeals for the Eleventh Circuit which affirmed the Judgment of the District Court on February 4, 2010. (ECF No. 160.)   The United States Supreme Court denied certiorari in Petitioner's case on May 7, 2010 (Doc. 161), and, on April 4, 2011, Petitioner timely filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (ECF No. 162).

## DISCUSSION

In his § 2255 pleadings, Petitioner cites eight grounds for relief.   Grounds 1 through 7 allege ineffective assistance of trial counsel.   Ground 8 alleges ineffective assistance of appellate counsel.

## I.      Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). However, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 787 (2011) (quoting *Strickland,* 466 U.S. at 688 (1984)).

To establish deficient performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. There is a strong presumption that the challenged action constituted sound trial strategy. *Chatelain v. Singletary*, 89 F.3d 749

(11th Cir. 1996). In order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318 (11th Cir. 2002). To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have been different. *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995); and *Meeks v. Moore*, 216 F.3d 951 (11th Cir. 2000). If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Haley*, 209 F.3d 1243 (11th Cir. 2000).

**Ground One:**        **Whether Counsel's failure to object to or file a motion to suppress an in-court identification of Petitioner by Daphne Wilson as unreliable constituted ineffective assistance.**

In his first Ground, Petitioner argues that his trial counsel was ineffective for failing to object to for file a motion to suppress the in-court identification of Petitioner by Daphne Wilson. (Pet'r's Pet. 5.) He contends that Wilson, an eyewitness, did not recognize him at Recorder's Court two days after the kidnapping even though he was sitting only a few feet from her in court and that her initial statement to police was that "subject #3 was 5'9" to 5'11", 160-170 pds. [Petitioner] stand 6'4." (*Id.*) Petitioner argues that his trial counsel should have objected to her testimony as unreliable and prejudicial and because he did not, his legal assistance was ineffective. (*Id.*)

A "motion to suppress" is defined in Black's Law Dictionary as "[a] request that the court prohibit the introduction of illegally obtained evidence at a criminal trial."

*Black's Law Dictionary* (9th ed. 2009).   In this case, Wilson's testimony at the preliminary hearing regarding the identification and description of one of the alleged perpetrators is not "illegally obtained evidence."   Petitioner's attorney would have been unable to keep Wilson's eye-witness testimony out of the trial, and his only avenue of attacking her reliability would have been through cross-examination.   Therefore, trial counsel cannot be found to have been ineffective for failing to attempt to exclude the testimony of Daphne Wilson who was a witness to the events in question.   Petitioner's claim must fail.

**Ground Two:        Whether counsel was ineffective for failing to investigate phone recordings or request funds for an expert voice analyst.**

Petitioner next argues that his counsel was ineffective for failing to investigate the phone recordings in this case or to request funds for an expert voice analyst.  (Pet'r's Pet. 5.)   Specifically, he contends that if his counsel would have investigated the phone recordings or requested funds to hire an expert voice analyst, he would have been acquitted of all charges because "the expert would have testified that the voice on the tape was that of Shyontez Jackson, not me."  (*Id.*)

The Eleventh Circuit Court of Appeals has held, however, that

"counsel need not always investigate before pursuing or not pursuing a line of defense.  Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly. For example, counsel's reliance on particular lines of defense to the exclusion of others-whether or not he investigated those other defenses-is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable."

*Chandler v. United States,* 218 F.3d 1305, 1318 (11th Cir. 2000) (internal citations

omitted).  Thus, where trial counsel determines that further investigation is unnecessary, he cannot be found to be ineffective for failing to pursue the same.

In this case, Petitioner's assumption that had his counsel investigated the phone recordings or requested funds to hire an expert voice analyst, he would have been acquitted is merely that, an assumption.  Petitioner's counsel cannot be found to have been ineffective for failing to investigate an avenue of defense that Petitioner speculates could have changed the result of the trial.  As such, no error is found as to this claim.

**Ground Three:      Whether counsel was ineffective for failing to object to the government's use of perjured testimony from its witnesses.**

Petitioner next argues that his counsel was ineffective for failing to object to the testimony of the Government's witnesses, which he claims was perjured.  (Pet'r's Pet. 5.) He contends that witnesses Daphne Wilson, Rodney Riggins, and Shyontez Jackson each offered perjured testimony to which his counsel did not object and that had his counsel impeached the witnesses with their prior statements, the result of the trial would have been different. (*Id.*)

Petitioner argues that Ms. Wilson's testimony was knowingly untruthful because the height and weight description she gave prior to trial did not match him.  (ECF No. 175, p. 27.)  Petitioner contends that Mr. Jackson's and Mr. Riggins' testimony was inconsistent with their prior statements regarding the circumstances surrounding the kidnapping, and as such, was knowingly false.  (*Id.* at 28-30.)  Petitioner claims that these inconsistencies put the government on notice that the testimony was false.   Petitioner, however, has failed to present any evidence that the testimony given under oath at trial

was indeed perjury.  Petitioner has offered no proof that the statements given by Riggins and Jackson prior to trial were indeed untruthful statements and that the statements given under penalty of perjury at trial were factual.

Secondly, Petitioner has failed to present evidence that had his counsel been able to impeach the testimony, that he would have been acquitted.  That is mere speculation on Petitioner's part.  Furthermore, Petitioner's counsel could not have stopped the witnesses from testifying.  Wilson, Jackson and Riggins were witnesses called by the prosecution during its case in chief to present the facts as alleged in the indictment.

Evidence presented at the trial showed Petitioner's physical presence at the crime scene, and there were other witnesses called by the Government, specifically, Carol Oates and Tomika Durham, that testified as to Petitioner's involvement in the crime.  Thus, Petitioner has not established that his counsel's performance was deficient merely because he did not object to the testimony of Wilson, Riggins or Jackson.  This claim must therefore fail.

**Ground Four:**          **Whether counsel was ineffective for failing to object to the government's misconduct in intimidating Darrell Joseph into not testifying in Petitioner's favor.**

Next, Petitioner contends that his counsel was ineffective for failing to object to the government's misconduct regarding witness Daryl Joseph.  (Pet'r's Pet. 6.) Specifically, he contends that the government intimidated Daryl Joseph and convinced him not to testify on Petitioner's behalf.  (*Id.*)  Petitioner argues that when the government entered into its plea agreement with one of his co-defendants, Daryl Joseph, it knew or should have known that Petitioner was innocent of the crimes in this case.

Petitioner claims that "based upon this knowledge, the government entered into a plea agreement with Mr. Joseph that falsely stated that I accompanied him into the premises in efforts to prohibit him from exonerating me of the crime at trial." (*Id.*)  He contends that had his counsel objected to said misconduct by the prosecution, the result of the trial would have been different and the indictment would have been dismissed.  (*Id.* at 9.)

Petitioner once again fails to present any evidence to support his claim that the government intimidated witness Daryl Joseph into not testifying on his behalf.  As was noted by the Respondent, Joseph implicated Petitioner in the crime in his plea agreement and acknowledged that if he testified, said testimony would be consistent with the facts stipulated in the plea agreement.  (ECF No. 127, p. 9.)  In what he entitled a "Motion to Expand the Record"[1] (ECF No. 176), Petitioner sought to introduce a "newly discovered affidavit" purportedly signed by Daryl Joseph which alleges that Petitioner was not involved in the crime and that the government planned to charge him with perjury if he testified to that effect. (Joseph Aff. ¶¶ 9-12.)  Petitioner alleges the affidavit was completed on April 7, 2011, and received by him on June 24, 2011.  (Mot. to Expand the Record, 1.)  However, Petitioner fails to explain why he did not obtain the evidence until more than three years after his trial or why he could not have discovered it sooner.[2]  Notwithstanding the potential authenticity issues which arise from the submission of the affidavit, the reliability of the facts alleged in the affidavit has not been demonstrated.  All Petitioner has produced is a newly created statement by a co-defendant that now

---

1 Petitioner's Motion to Expand the Record is hereby GRANTED for the sole purpose of review of this issue.

2 Obviously, an affidavit executed on April 7, 2011, would not be in existence in 2007, and counsel cannot be faulted for a failure to "discover" or employ it at trial.

asserts the same facts that Petitioner has maintained from the time of his arrest.

Nonetheless, Petitioner's counsel could not have been aware of the alleged intimidation of Daryl Joseph at the time of his trial.[3]  As such, there was no reason for Petitioner's counsel to object to any "misconduct" on the part of the prosecution with regard to any potential testimony Daryl Joseph would have given.  This claim is wholly without merit.

**Ground Five:**   **Whether trial counsel was ineffective for failing to object to the Government's introduction of co-defendants' plea agreements.**

Claimant's next contention of ineffective assistance of counsel argues that his counsel failed to object to the introduction of his co-defendants, Rodney Riggins and Daryl Joseph's, plea agreements.  (Pet'r's Pet. 9, 10.)  Although the Petitioner is correct that his co-defendant, Riggins, did testify and that it was noted during the trial that he had previously pled guilty to the crime, there is no evidence that the plea agreements were introduced to the jury.

Of note, merely stating that a co-defendant has pled guilty in exchange for his testimony in a criminal case does not deprive a defendant of his right to a fair trial as Petitioner claims.  However, in his Traverse to the government's Response to his Motion to Vacate, Petitioner states that he "abandons this claim in light of the strength of [his] other claims."  As such, this ground is deemed abandoned.

**Ground Six:**   **Whether trial counsel was ineffective in failing to raise the issue**

---

3 Petitioner alleges in his "Motion in Traverse to the United States' Response" to his Motion to Vacate that the affidavit averred that Joseph told "*Petitioner's* attorney that contrary to his plea agreement, Mr. Jackson, not the petitioner, was actually the person who kidnapped the child with him."  (ECF No. 179, 180, p. 9)(emphasis added).  Mr. Joseph's affidavit, however, fails to state that he told Petitioner's attorney anything, but merely states that he told his own attorney and the FBI that Petitioner had nothing to do with the crime.  (ECF No. 176, p. 5 ¶ 11.)

**of the Government's withholding of *Brady, Giglio and Napue* material.**

Petitioner's next allegation of error asserts that his counsel was ineffective for failing to raise the issue of:

> "whether the government withheld *Brady, Giglio*, and *Napue* material pertaining to its failure to disclose the fact that Mr. Joseph revealed that Shyontez Jackson was subject # 3 who participated in the kidnapping of the victim and entry into the premises and the fact that Mr. Riggins received concessions from the government for invoking his fifth amendment right and not testifying in [Petitioner's] behalf in the form of his being able to serve his federal and state time in state prison not federal."

(Pet'r's Pet. 10.)  In his later pleadings, Petitioner stated with regard to this claim that he "specifically asserted that trial counsel provided ineffective assistance of counsel for failing to object to the government's non-disclosure of *Brady* and *Giglio* violations with respect to its failure to disclose DNA results of Government's Exhibits 16, 19, and 51." (ECF Nos. 173, 179.)

This claim is convoluted at best.  It should again be noted that Petitioner has failed to cite to any *verifiable* evidence which would substantiate this claim.  His reliance on the affidavit he filed in Jackson's name is misplaced as is noted in the discussion of the previous issue.  Even still, Petitioner has failed to establish that his counsel knew of the government's alleged misconduct regarding non-disclosure of violations pertaining to certain DNA results during his trial. Petitioner's mere allegations regarding what he claims his counsel "knew" are not enough.  It logically follows, then, that counsel could not be found ineffective for failing to raise the issue.

**Ground Seven:       Whether trial counsel was ineffective for failing to object to the trial court's failure to decrease the base offense level of the**

9

**charge for sentencing purposes.**

Next, Petitioner argues that his counsel was ineffective for failing to object to the trial court's failure to decrease the base offense level of the charge for sentencing purposes.  (Pet'r's Pet. 11; ECF No. 173-2, p. 45.)  Petitioner claims that because the victim in this case was released within 24 hours, the base level for sentencing should have been decreased by one level pursuant to Guideline § 2A4.1(b)(4)(c).  (*Id.*)

Section 2A4.1 of the United States Sentencing Guidelines regarding Kidnapping, Abduction, and Unlawful Restraint, which were in effect when Petitioner was indicted, reads:

(a)     Base Offense Level:  **32**
(b)     Specific Offense Characteristics
(1)     If a ransom demand or a demand upon government was made, increase by **6** levels.
(2)     (A) If the victim sustained permanent or life-threatening bodily injury, increase by  **4** levels; (B) if the victim sustained serious bodily injury, increase by **2** levels; or (C) if the degree of injury is between that  specified in subdivisions (A) and (B), increase by **3** levels.
(3)     If a dangerous weapon was used, increase by **2** levels.
(4)     (A) If the victim was not released before thirty days had elapsed, increase by **2** levels. (B) If the victim was not released before seven days had elapsed, increase by **1** level.
(5)     If the victim was sexually exploited, increase by **6** levels.
(6)     If the victim is a minor and, in exchange for money or other consideration, was   placed in the care or custody of another person who had no legal right to such care or custody of the victim, increase by **3** levels.
(7)     If the victim was kidnapped, abducted, or unlawfully restrained during the commission of, or in connection with, another offense or escape therefrom; or if another offense was committed during the kidnapping, abduction, or unlawful restraint, increase to --
(A) the offense level from the Chapter Two offense guideline applicable to that other offense if such offense guideline includes an adjustment for kidnapping, abduction,  or  unlawful  restraint,  or

> otherwise takes such conduct into account; or
> (B) **4** plus the offense level from the offense guideline applicable to that other offense, but in no event greater than level **43**, in any other case,
> if the resulting offense level is greater than that determined above.

U.S. Sentencing Guidelines Manual §2A4.1 (2006.)   The relevant Guidelines provide for *increasing* the base level where a kidnapping victim is not released within a certain time, but there is no provision for *decreasing* the base level where the victim is released any earlier.   Because there is no provision for seeking a one level reduction in the base offense level, there can be found no error in failing to pursue the reduction.   Therefore, Petitioner's counsel was not ineffective for failing to ask for a one-level reduction in the base offense level in this case.

## II.    Ineffective Assistance of Appellate Counsel

With regard to any claims against counsel on appeal, the Eleventh Circuit Court of Appeals has held that the *Strickland* standard also applies to ineffective assistance of appellate counsel claims.   *Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991).   To prevail on such claims, a petitioner must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense.   *Id.*   Furthermore, "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Philmore v. McNeil*, 575 F.3d 1251, 1265 (11th Cir. 2009) (citing *Heath* 941 F.2d at 1130-31).

**Ground Eight:**    **Whether appellate counsel's failure to raise the above claims raised in Grounds 1-7 deprived Petitioner of his rights to effective assistance of counsel.**

Petitioner argues that he had "several arguable issues to appeal" which he addressed in Grounds 1-7 above.  (Pet'r's Pet. 11; ECF No. 173-2, p. 46.)  He contends that the issues actually raised by appellate counsel in his direct appeal were frivolous, but that counsel should have raised the issues he has cited in his petition.  (*Id.*)

Finding that none of Petitioner's Grounds for ineffective assistance of trial counsel relief are meritorious, appellate counsel cannot be found to be ineffective for failing to raise them.  As such, this claim must fail.

## III.    Pending Motions

Petitioner has filed several motions that are currently pending in this case. Specifically, Petitioner has filed a Motion for Appointment of an Expert Voice Analyst to Analyze the Tape Recordings in the Government's Possession (ECF No. 164); Motion for Post-Conviction Discovery Pursuant to Rule 6 of the Rules Governing § 2255 Proceedings and/or Motion to Compel DNA Testing of Government's Exhibit 19 (ECF No. 167); a letter Motion for Post-Conviction Discovery (ECF No. 172); and a Motion to for Summary Judgment and/or Motion to Compel Post-Conviction Discovery (ECF No. 178).  Because the Court has recommended denial of each of the Grounds for Relief in Petitioner's Motion to Vacate, each of the pending motions is HEREBY DENIED AS MOOT.

## IV.    Certificate of Appealability

Rule 11(a) of Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Title 28, United States Code,

Section 2253(c) provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from —
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of a process issued by a State court: or
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under ¶ (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under ¶ (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

Petitioner cannot meet this standard and, therefore, a certificate of appealability in this case should be denied.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner Marshall's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner and/or the Government may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN FOURTEEN (14) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 27th day of February, 2012.


**S/ STEPHEN HYLES**
**UNITED STATES MAGISTRATE JUDGE**